**Mitchell W. Lewis and Carol A. Lewis v. Stephen J. H. Pickering, Jeannette A. Pickering, et al.**

[349 A.2d 715]

No. 59-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed December 2, 1975

*Adams, Meaker & Darby*, Waterbury, for Plaintiffs.

*Ewing & Spokes*, Burlington, for Defendants.

**Smith, J.** Plaintiffs and defendants are owners of adjoining plots of land on Lake Iroquois in the Town of Hinesburg. The plaintiffs, the Lewises, own three lots upon which is located a camp. The defendants, the Pickerings, own one parcel of land which is easterly of and abuts the easterly line of the plaintiffs' property. The cause of this controversy is that the Pickerings' lot size does not comply with the Hinesburg zoning regulations. A larger lot than theirs is required for building construction in a recreationally zoned area. The parcel of land owned by the defendants was purchased by them in 1973 from one Myers, who had acquired his title to the lot prior to the enactment of zoning ordinances by the Town of Hinesburg.

The defendants applied for a zoning variance in February, 1974, to construct a camp dwelling on their lot. Although the zoning administrator denied the application, the Zoning Board of Adjustment of Hinesburg, to whom the defendants appealed, granted the variance, and issued the defendants a zoning permit. Upon the receipt of this permit, the defendants started the construction of a camp on their lot. After construction had started, the plaintiffs brought an action in the Chittenden Superior Court seeking to enjoin the construction of the building. Defendants and plaintiffs stipulated to a temporary injunction preventing further construction. That case is still pending.

Following the issuance of the injunction, the defendants reapplied for a zoning permit, which was processed as a request for a variance. Again the Zoning Board of Adjustment

granted a variance and from this decision the plaintiffs appealed to the Chittenden Superior Court.

The Chittenden Superior Court granted a variance to the defendants from the Town of Hinesburg zoning regulations for the construction of a camp dwelling, and from that judgment the plaintiffs have appealed to this Court.

The question presented here is whether the defendants can be deemed to have created their own hardship by purchasing their property after the effective date of the Town of Hinesburg zoning regulation, or, stated in other words, whether the findings that the defendants did not create their own hardship and that their lot is unique are supported by the evidence.

24 V.S.A. § 4468(a) states that variances may be granted by a board of adjustment or superior court if certain facts are found and such finding is specified in the decision:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefor necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will

represent the least modification of the zoning regulation and of the plan.

A further subsection follows in § 4468 which is not material to the question presented.

The lower court found that the lot owned by the defendants has unique physical circumstances due to its narrowness and shallowness, peculiar to that particular property. This seems to be undisputed. Because of the physical circumstances found by the lower court, there is no possibility that the lot can be developed in strict conformity with the Hinesburg zoning regulations, and a variance is necessary to enable the defendants to have reasonable use of their property. Further, the granting of the variance will not alter the essential character of the neighborhood, which the evidence disclosed to be that of seasonal residences; nor will the use be detrimental to the public welfare. The court also found that the requested variance represents the minimum deviation which would still afford relief, and it found that the variance affects the least possible modification of the zoning ordinances. All such findings are supported by the record before us.

Plaintiffs claimed below that if the defendants constructed the necessary sewage disposal system on their premises the effluent would run onto the plaintiffs' property. The lower court found that the defendants could install an adequate sewer system which would not impair adjoining property. This finding is supported by the evidence below, including the testimony of experts on the subject.

Without doubt the most controversial finding below is Finding 25: "The Pickerings have not created the unnecessary hardship that exists by virtue of the physical characteristics of the land."

It is the plaintiffs' claim that the defendants bought their lot at a time when they knew that it did not comply with the physical characteristics required for the construction of a seasonal residence under the Hinesburg zoning regulations, and thus created their own hardship. Plaintiffs claim that this state does not recognize any difference between a "use variance" and an "area variance", and cite *DeWitt* v. *Brattleboro Zoning Board of Adjustment,* 128 Vt. 313, 262 A.2d 472

(1970), and *L. M. Pike and Son, Inc.* v. *Town of Waterford,* 130 Vt. 432, 296 A.2d 262 (1972) in support of their assertions.

In the *Brattleboro* case the applicant was not only seeking a use variance, but the expansion of a nonconforming use, actually the expansion of a gas filling station. In *Pike,* the owner failed to request a zoning permit and proceeded to develop the property without securing it. Neither situation is comparable to the case now before us.

■  In the present controversy, the defendants sought and obtained a permit for a use of their property which was in conformance with the uses of area lots. The variance sought was not for a use, but for a dimensional variance, or an area variance. "In most states the courts will approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance." 3 R. Anderson, American Law of Zoning § 14.45, at 3 (1968). There can be no dispute that the defendants would have been entitled to construct a summer camp upon their lot under the zoning regulations of Hinesburg had their lot been of the physical size called for in the ordinances.

■  This brings us to the key and final issue. Did the defendants create the very hardship from which they sought relief by variance? As we have previously noted in this opinion, the defendants' predecessor in title owned the same lot at a time prior to the enactment of the zoning ordinances. There can be little dispute that the predecessor could have erected a building on the property in question. The defendants are now the owners of the identical lot, but took title after the passage of the zoning ordinances.

The Pickerings did not create the physical characteristics of the lot that they purchased. Had it still been owned by Myers, the predecessor in title, and he had made application for a variance such as was sought by the defendants, certainly no claim could have been raised that he had created his own hardship.

> Despite the fact that some courts have used language which, taken upon its face, would indicate that even where a unique hardship existed with respect to land

which would have warranted the person owning that property prior to the enactment of the ordinance to apply for and receive a variance, the mere act of purchase with knowledge of the ordinance bars the purchaser from the same relief, it is apparent that few higher court decisions have actually so decided. In each case in which the refusal of a variance was upheld and in which such language was used, the facts showed either that there was an affirmative act which created the hardship peculiar to the property involved or that there was not sufficient evidence that the property was not reasonably adapted for a conforming use.

2 A. Rathkopf, The Law of Zoning and Planning § 4, at 48-20 (3rd ed. 1972). Here we have no affirmative act by the defendants which created the hardship peculiar to their lot.

In *Wilson* v. *Borough of Mountainside*, 42 N.J. 426, 453, 201 A.2d 540, 554 (1964), the New Jersey Supreme Court stated:

> We wish to make it clear that if a prior owner would be entitled to such relief, that right is not lost to a purchaser simply because he bought with knowledge of the zoning regulation involved. This situation is not within the realm of the self-created hardship which will generally bar relief.

We also cite, with approval, the following language from *Griffin Construction Co.* v. *Board of Adjustment of Teaneck*, 85 N.J. Super. 472, 205 A.2d 313, 316 (1964):

> [W]here an original owner would be entitled to a variance under a specific set of facts, any successor in title is ordinarily also entitled to such a variance, providing that no owner in the chain of title since the adoption of the zoning restriction has done anything to create the condition for which relief by variance is sought.

*Judgment affirmed.*