STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Ernest Levesque,    }
Jr.                               }
                                  }    Docket No. 94-5-00 Vtec
                                  }
                                  }

City of South Burlington, Plaintiff,                       
                                  }
                                  }
v                                   }    Docket No. 175-8-00 Vtec
                                  }
Ernest and Donna Levesque,          }
Defendants.                          

DECISION and ORDER

In Docket No. 94-5-00 Vtec, Appellant Ernest Levesque, Jr. appealed from a decision of the Development Review Board (DRB) of the City of South Burlington, denying a variance for the construction of a third rental unit and an accessory handicapped residential unit on his property. In Docket No. 175-8-00 Vtec, the City brought an enforcement action for the construction of the two units without zoning approval. The two matters were consolidated.

Appellant-Defendant Ernest Levesque appeared and represented himself; the City of South Burlington is represented by Amanda S.E. Lafferty, Esq. An evidentiary hearing was held before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. In addition, in Docket No. 175-8-00 Vtec, the City has moved for summary judgment. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant/Defendants own and occupy a 75-foot by 200-foot parcel of land at 195 Hinesburg Road in the R-4 (Residential 4) zoning district of the City of South Burlington. Multi-family dwellings of up to 4 units are allowed, with 6,000 square feet of lot area per unit. The required frontage on a major street such as Hinesburg Road is 170 feet. Appellant/Defendants= 15,000-square-foot property is improved with a 2-family dwelling and a detached garage/workshop. The evidence does not reflect whether the original house was constructed prior to the adoption of zoning. The property obtained two zoning permits for renovations and additions in 1982 and 1983, and a zoning permit was issued in 1984 to allow its conversion to a 2-family dwelling, based on a variance issued in 1984 from the required frontage. It met and continues to meet the density requirements for a 2-family dwelling. Appellant/Defendants live in the downstairs of the duplex (which also has access to some upstairs rooms, and rent out the second floor apartment.

At the same time as Appellant/Defendants= variance in 1984, a nearby property (the Goodrich property) on the corner of Hinesburg Road and Simpson Court was issued a variance from the density requirements to build an addition to an existing duplex to convert it to three 2-bedroom townhouses. Neither Appellant/Defendants= 1984 variance nor the Goodrich variance addressed

all of the required elements of 24 V.S.A. ' 4468; however, neither was appealed and both became final.

Appellant/Defendants obtained four more zoning permits between 1986 and 1993 for additions to the house and to build a 28' x 28' detached garage and storage area.

In their papers, Appellant/Defendants refer to a May 10, 1999, ruling of the then-Zoning Board of Adjustment of the City of South Burlington, apparently upholding the Zoning Administrator= s decision that an A accessory residential unit was not allowed on the applicant= s property,@ apparently because under the City= s zoning regulations such a unit is only allowed in connection with a single-family residence. ' 26.75, and see 24 V.S.A. ' 4406(4). There is no indication that Appellant/Defendants ever appealed that ruling to this Court; therefore it is not within the jurisdiction of this Court in either of these cases.

Under ' 26.75 of the City= s Zoning Regulations and 24 V.S.A. ' 4406(4), an accessory residential unit for an older or handicapped relative may only be constructed, with approval of the DRB, if it is within or attached to a primary single-family residence, and if the primary residence is occupied by the owner, and if the accessory unit does not exceed 30% of the floor space of the living area of the primary residence (or 400 square feet, whichever is greater). Appellant/Defendants argue that it is not fair for this provision to apply only to a single-family residence. The constitutionality of that provision is not before the Court, as the March 1999 ruling of the then-ZBA was not appealed. However, unless the distinction between single-family and multiple-family residences is entirely irrational, the decision to make that distinction is a matter for the state legislature or the City= s legislative body, and not for the courts.

Commencing on or before September 27, 1999, Appellant/Defendants had rented rooms in their portion of the house, each with an associated bathroom, to persons who arranged for separate mail delivery to the building. Those persons refused to allow an inspector into their portion of the house to determine if it was a separate living unit in September of 1999. Those persons were evicted by Appellant/Defendants as of the spring of 2000, at some expense to Appellant/Defendants.

On September 27, 1999, the City issued a Notice of Violation to Appellant/Defendants, stating that they had commenced land development on the property without a permit, by adding two additional dwelling units to the two approved dwelling units, without first having obtained a zoning permit from the City. The Notice of Violation directed Appellant/Defendants to remove the two additional units and return the property to the originally-approved two dwelling units, and advised them that the City may pursue an enforcement proceeding should they fail to A accomplish the actions directed in this letter.@ The Notice of Violation advised Appellant/Defendants of their right to appeal to the DRB within 15 days. Appellant/Defendants did not appeal the Notice of Violation, and therefore cannot contest the existence of the violation. Accordingly, the City= s Motion for Summary Judgment on this point is GRANTED.

However, the evidence only shows that Appellant/Defendants were operating a rooming house; there is no independent evidence of separate dwelling units. Accordingly, the injunctive relief requested by the City is hereby GRANTED: Appellant/Defendants shall remove any limitations on internal access within the house to the rooms rented out to lodgers, so that the house consists of two and only two dwelling units. Any requirement for a permit or permit amendment for the operation of a rooming house is beyond the scope of this case. Although the City also requested penalties in the amount of $100/day, the court determines that no penalty is warranted in this case, beyond Appellant/Defendants= expenses in evicting the recalcitrant lodgers and in removing any limitation on internal access within their dwelling unit. Accordingly, we impose a penalty of zero dollars per day, for the period from October 4, 1999 until the date in the spring of 2000 when the lodgers moved out.

Appellant/Defendants applied in February 2000 for a variance to create a third rental unit within the first floor of the house, and to build an 856-square-foot addition to the garage to create a detached accessory handicapped residential unit. The elements of the Zoning Regulations requiring a variance would be the frontage requirement, the 6,000-square-feet-per-unit requirement, the one-principal-building-per-lot requirement (' 26.65) and the requirements that an accessory residential unit be within or attached to the primary residence, that the owner occupy the primary residence, and that the primary residence be single-family. (' 26.75).

Appellant/Defendants make cogent arguments from a city planning perspective that the City= s Zoning Regulations should allow a higher density in-filling in the core central area of the City, to avoid suburban sprawl and to provide affordable housing within the City. However, such arguments should be directed to the Planning Commission and legislative body of the City for consideration as amendments to the Zoning Regulations. This Court can only interpret and apply the Zoning Regulations as they exist in a particular municipality, and as they are constrained by state statute and the Vermont and federal constitutions.

In order to qualify for a variance, Appellant must meet all five requirements of 24 V.S.A. ' 4468, see ' 27.00 of the Zoning Regulations:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That the unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.


Now that it has been developed with a duplex and a garage/workshop, Appellant/Defendants= parcel meets only subsection 4 of these five provisions. If it fails any one of the provisions, it fails to qualify for a variance, and therefore the variance application must be denied.

The lot is narrower than called for by the frontage regulations, but is not otherwise unusual in its shape or topography. It is already in reasonable use as a duplex.

The claimed hardship, if any, is an economic one, which is not a proper consideration of the variance process once the landowner is able to make a reasonable use of the property. See, In re McDonald= s Corp., 151 Vt. 346, 350 (1989). Appellant/Defendants wish to rent out three units in the house and live in the accessory dwelling unit, instead of living in one of the duplex units and renting out the other. They have not applied to make any changes within the house to change the

configuration of the downstairs to accommodate the handicapped living needs of the family members, which would perhaps be the minimum variance to afford relief.

The proposed project would not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare.

Based on the foregoing, in Docket No. 94-5-00 Vtec it is hereby ORDERED and ADJUDGED that judgment be entered in favor of the City on Appellant/Defendants= application for a variance: the variance application is DENIED.

Based on the foregoing, in Docket No. 175-8-00 Vtec it is hereby ORDERED and ADJUDGED that the City= s Motion for Summary Judgment is GRANTED, and that injunctive relief is GRANTED as described above.

Dated at Barre, Vermont, this 12th day of October, 2001.


_____
Merideth Wright
Environmental Judge

---

**Footnotes**